LUCIAN WOODWORTH, PLAINTIFF IN ERROR, V. AARON HAMMOND, DEFENDANT IN ERROR.

1. **Contract to Dig Well:** CONDITIONS: WAIVER. H. and W. entered into a written contract by which H. agreed to dig à well for W., the compensation to depend upon the quantity of water produced, the measurements to be made in the manner provided for in the contract. The well was completed and the water measured by H., but not in strict compliance with the method provided for in the contract. W. was not present at such measurement. He made no measurements himself and never sought to have any made. The measurements made by H. showed that the quantity of water secured was equal to the amount required by the contract. *Held,* That the failure of W. to procure any measurements to be made was a waiver of that part of the contract and that the fact that the measurement was not made in strict compliance with the contract did not of itself constitute a defense.

2. ———: ———: VERDICT. In such case the testimony showing a substantial compliance with the contract, the requisite quantity of water being secured, a verdict of the jury in favor of H. will not be disturbed. ·

ERROR to the district court for Douglas county. Tried before WAKELEY, J.

*Redick & Redick,* for plaintiff in error.

*W. J. Connell,* for defendant in error. ·

REESE, J.

This action was upon a written contract for digging a well. The plaintiff below alleged in his petition, substantially, that on July 11, 1876, plaintiff and defendant entered into a written contract as follows:

" A. Hammond, of Jacksonville, Illinois, hereby agrees to locate, sink, and curb a well for L. Woodworth, on his place in South Omaha, within less than twenty feet of where he has already sunk, guaranteeing five hundred gallons of water in twenty-four hours, for which, said L. Woodworth covenants and agrees to pay said A. Hammond or his order six dollars for each and every one hundred gallons of water said well is capable of and shall supply in twenty-four hours, the supply to be ascertained by first taking out all the water from said well and to continue to take it out as fast as it runs into said well for three hours, that ratio to be the amount of twenty-four hours' supply, which is to be paid for on the completion of said Hammond's part of the contract, said well not to exceed two hundred and fifty dollars.

" Signed,                          L. WOODWORTH.
" Witness,                         A. HAMMOND."

" For description and other provisions of contract see the other side."

On which other side appears the following:

" And said L. Woodworth further agrees to furnish all the necessary curbing at the well free of charge, and said Hammond also agrees that if said well supplies more than 500 gallons of water in twenty-four hours, then said Woodworth is to pay $2.00 per one hundred gallons for what it may supply, said amount not to exceed two hundred and fifty (250) dollars.

" Signed                          L. WOODWORTH.
                                  "A. HAMMOND."

That the plaintiff did locate, sink, and properly curb said well and fully complete it April 8, 1877; that said well is capable of supplying upwards of 15,000 gallons in twenty-four hours; that the defendant though often requested has not paid the amount due, and praying judgment for $250 and interest.

The defendant (plaintiff in error here) filed his answer, setting up his defenses as follows: Denying each and every allegation in petition except those admitted. That he signed said contract, but that plaintiff delayed commencing work so long that the defendant suffered great damage; that in settlement of said damages, and before any work was done, plaintiff and defendant entered into another and different agreement as follows: That the contract set out in petition be canceled, and plaintiff would go into a well that defendant then had, about 110 feet deep, and at the depth of forty feet from the surface, tunnel across and procure him a sufficient quantity of water, using the old well as a reservoir; that the well should produce at least 15,000 gallons of water in twenty-four hours from the vein struck by said tunnel; that plaintiff would brick it up and complete it and receive $200 for the same. That the plaintiff did not commence within a reasonable time nor until six months thereafter, and defendant was obliged to haul water at an expense of $75, which he sets up as a counter-claim; that in March, 1877, plaintiff commenced sinking defendant's old well deeper, struck a little water and abandoned it; afterwards plaintiff dug a few feet deeper and procured two and a half or three feet of water, but not sufficient for defendant's use. He denies that plaintiff has complied with the condition of his contract, but wasted and destroyed lumber to the amount of fifty dollars, and put defendant to extra expense of fifty dollars; defendant paid twenty-five dollars on said contract; that plaintiff has no interest in the suit, and that he is not indebted to said plaintiff and prays judgment against the plaintiff for $225 and costs.

Plaintiff for reply denied all the allegations of the answer.

There was a jury trial resulting in a verdict and judgment in favor of the plaintiff in the action for $244. The defendant, as plaintiff in error, brings the cause to this court, alleging that the verdict is not supported by sufficient evidence.

By the terms of the contract the price to be paid was made to depend upon the quantity of water secured; this to be ascertained by certain tests or methods of measurement prescribed therein. The proof did not sustain the allegation of the answer that the contract was abandoned, but rather that plaintiff in error had a well of considerable depth which had been abandoned, and by his consent defendant in error dug this well down until water was reached. The work was not prosecuted with vigor and the well was not completed until in the spring of 1877. But to this no particular objection appears to have been made, and must now be considered as waived. The real question is, whether or not, by the tests shown to have been made, the amount found by the verdict was greater than the quantity of water found would justify. It appears from the testimony that no test or measurement of the water was made by both parties, as seems to be implied by the contract, but that all efforts in that direction were made by defendant in error or others in his interest or at his request. No measurement is shown to have been made by plaintiff in error, either in accordance with the contract or otherwise. As he seems not to have insisted upon or cared to have the measurement made in strict accordance with the contract, we do not think he can now insist upon a defense based upon that fact alone, since it is shown that three measurements were made by defendant in error. The question, then, of the *method* of measurement must be considered as waived and out of the case, and the verdict must be tested by the testimony showing the quantity

of water secured.  The defendant in error testified that the second test or measurement made by him was in company with Mr. Redfield, and with four men at the windlass the water was lowered six inches after an hour's work, and that at the rate shown by this test the well would supply twelve thousand six hundred gallons of water.  J. B. Redfield testified that he was present at this test.  He says: " Three, four, or five of us tested it and drew the bucket up four times altogether, which took seventeen or eighteen minutes in round numbers.  It lowered the water at last test an inch or two, filled up again to the level in ten or fifteen minutes.  L. C. Redfield was also present.  He says: " Hammond had a large iron bucket twenty-five inches deep, eighteen to twenty inches across, valve in bottom. When the bucket struck water it would settle immediately and valve would close when we pulled—four men on windlass—found height of water before and after test, lowered ten or twelve inches first test, second time a little over an inch—inch came back in ten or twelve minutes."

S. Jacobson testified : " I tested the well three hours one day with ten gallon bucket, would draw a bucket up every three minutes, and continued that for three hours;  did not lower the water any ;  measured it before and after test and no difference—four feet of water.   Notified Woodworth ; went to see him about brick ;  he said there was not water enough;  I said I was willing to test it any day."   This test seems to have been made before the well was finally completed.   It does not seem to have been a very reliable one, as at the rate the water was taken out it would yield only 4,800 gallons in twenty-four hours, but as the quantity of water was not diminished it affords no criterion as to the producing capacity of the well above the 4,800 gallons.   Hammond and Jacobson were interested parties. The Redfields appear not to have been.   Assuming, as we must do, in support of this verdict, that the jury did not allow any damages to plaintiff in error, and adopting the

measurement as testified to by the Redfields and as estimated in the brief of plaintiff in error, we find that upon the testimony of J. B. Redfield, after deducting the $25 paid and adding interest, the verdict would have been about $254. By the testimony of L. C. Redfield, by the same rules, it would have been about $240. Applying the same rule to the same test as testified to by Hammond, the verdict would have been much more. It therefore follows that the verdict, so far as these tests are concerned, is supported by the evidence.

It is claimed by defendant in error that certain instructions given to the jury by the court were erroneous, but the view we take of the case renders these objections unimportant, as they are virtually disposed of by the foregoing.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.